UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **HENRICHS GRAIN, Inc.,** an Illinois Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 09-1029 |
| **CARGILL, INCORPORATED,** a Delaware Corporation, | ) ) ) ) | |
| Defendant. | ) | |

## ORDER

Now before the Court is Defendant Cargill, Incorporated's ("Cargill") Motion to Stay Proceedings and to Compel Arbitration [#26]. For the reasons set forth below, Cargill's motion is GRANTED.

## BACKGROUND

Plaintiff Henrichs Grain, Inc. ("Henrichs Grain") filed its Complaint against Cargill in the Circuit Court of the Eleventh Judicial Circuit in Livingston County, Illinois, which Cargill removed to this Court on January 23, 2009. In its Complaint, Henrichs Grain alleged breach of fiduciary duty, consumer fraud, intentional interference with business relationships, a demand for accounting, a declaration that Cargill breached certain contracts so that Henrichs Grain has no further obligations or liabilities arising from those contracts, negligent misrepresentation, and fraudulent misrepresentation. Cargill filed the instant motion to stay proceedings and to compel arbitration on August 14, 2009. Following that, Henrichs Grain argued that Cargill failed to

1

provide the documents necessary for the Court to rule on Cargill's motion to compel arbitration.[1]
Cargill ultimately provided the additional contracts and the parties filed supplemental briefs on the arbitration issue.[2]

The parties entered into approximately 90 to 100 contracts for the sale of grain between 2003 and 2008. Over that period of time, four different versions of the arbitration clause appeared in their contracts. The first ("Version 1") reads:

> 1. The parties agree that the sole remedy for resolution of all disagreements or disputes between the parties arising under this Contract shall be arbitration proceedings under the trade association identified on the front side hereof. If no trade association is identified, then NGFA Arbitration Rules then in effect shall apply, and judgment upon the award may be entered in any court having jurisdiction thereof. The decision and award determined by such arbitration shall be final and binding upon both parties.

The second version ("Version 2") reads:

> 1. Unless otherwise provided herein, this Contract shall be subject to the Trade Rules of the National Grain and Feed Association (NGFA), which Trade Rules are incorporated herein by reference. The parties agree that the sole forum for resolution of all disagreements or disputes between the parties arising under this Contract or relating to the formation of this Contract shall be arbitration proceedings before NFGA pursuant to NGFA Arbitration Rules. The decision and award determined by such arbitration shall be final and binding upon both parties and judgment upon the award may be entered in any court having jurisdiction thereof. Copies of the NGFA Trade and Arbitration Rules are available from Buyer upon request.

The third version ("Version 3") reads:

> 1. **NGFA Trade and Arbitration Rules.** Unless otherwise provided herein, this Contract

---

[1] Henrichs Grain represents that it was only able to attach copies of eleven contracts between it and Cargill to its Complaint because a fire occurred at its business office, which caused the loss of many documents. Plf's Response, Dkt. 31, p.3.

[2] Henrichs Grain states in its Supplemental Brief in Response to Cargill's Motion to Stay Proceedings and to Compel Arbitration that there is still confusion regarding whether complete documentation has been provided by Cargill, but that the remaining issues regarding document production are not included to imply that the Court's ruling on the question of arbitration should be delayed. Dkt. 34, pp. 4-5.

shall be subject to the Trade Rules of the National Grain and Feed Association (NGFA), which Trade Rules are incorporated herein by reference. The parties agree that the sole forum for resolution of all disagreements or disputes between the parties arising under this Contract or relating to the formation of this Contract shall be arbitration proceedings before NGFA pursuant to NGFA Arbitration Rules. The decision and award determined by such arbitration shall be final and binding upon both parties and judgment upon the award may be entered in any court having jurisdiction thereof. Copies of the NGFA Trade and Arbitration Rules are available from Buyer upon request and are available at www.ngfa.org.

The fourth and final version ("Version 4") reads:

1. **NGFA Trade and Arbitration Rules.** Unless otherwise provided herein, this Contract, and all other grain contracts by and between Buyer and Seller, shall be subject to the Trade Rules of the National Grain and Feed Association (NGFA), which Trade Rules are incorporated herein by reference. The parties agree that the sole forum for resolution of all disagreements or disputes between the parties arising under any grain contract between Buyer and Seller or relating to the formation of any grain contract between Buyer and Seller shall be arbitration proceedings before NGFA pursuant to NGFA Arbitration Rules. The decision and award determined by such arbitration shall be final and binding upon both parties and judgment upon the award may be entered in any court having jurisdiction thereof. Copies of the NGFA Trade and Arbitration Rules are available from Buyer upon request and are available at www.ngfa.org. In addition to any damages otherwise provided by law, Buyer shall be entitled to recovery of its attorney's fees and costs.

## DISCUSSION

The Federal Arbitration Act ("FAA") provides that a written provision in a contract "evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 of the FAA declares a liberal federal policy that favors arbitration agreements. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999); *but see Gotham Holdings, LP v. Health Grades, Inc.*, 580 F.3d 664, 665 (7th Cir. 2009) (explaining that there is no federal policy favoring arbitration, but rather, "arbitration agreements are optional and enforced just like

other contracts"). Federal courts may apply state contract law to resolve issues of contract formation and validity. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Perry v. Thomas*, 482 U.S. 483, 492, n.9 (1987) (agreements to arbitrate are valid and enforceable as a matter of federal law, but state law is applicable to govern issues concerning validity, revocability, and enforceability of contracts generally).

**I. Procedural Unconscionability**

Henrichs Grain argues that all four versions of the arbitration clause contained in the parties' contracts are procedurally unconscionable under Illinois law. "Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it, and also takes into account a lack of bargaining power." *Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 622 (Ill. 2006) (*citing Frank's Maint. & Eng'g v. C.A. Roberts Co.*, 408 N.E.2d 403 (Ill. App. 1st Dist. 1980)); *Kinkel v. Cingular Wireless*, 857 N.E.2d 250, 264 (Ill. 2006). The factors to be considered include the manner in which the contract was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print. *Frank's Maint*., 408 N.E.2d at 410. The totality of the circumstances should be considered to determine whether a contract provision is procedurally unconscionable. *Id.*; Kinkel, 857 N.E.2d at 264.

Here, Henrichs Grain argues that all four versions of the arbitration clause are procedurally unconscionable because they were never brought to the attention of Henrichs Grain, they appeared on the reverse side of the contracts, and they were buried in a maze of fine print. In regard to Version 1, Henrichs Grain additionally argues procedural unconscionability because

4

the NGFA was only referred to by abbreviation and was not specified as the organization to conduct the arbitration. Henrichs Grain finds fault with the fact that the NGFA Arbitration Rules ("Rules") were not made available to it by Cargill in Version 1, and that making the Rules available "upon request" in Version 2 was an implicit admission by Cargill that the Rules were not made available to Henrichs Grain previously.

On the front side of the grain purchase contracts that were produced by Cargill, above the signature line, in bold print, it reads: "**The terms of this agreement include terms and conditions set forth on the reverse side hereof, which form a part of this contract, and which are legally binding upon the Seller and Buyer.**"[3] The front side of the contracts also reads: "Rules to Govern: NGFA". The reverse side of the contracts is labeled "Purchase Terms", and at the top of an enumerated list of terms, the arbitration clause appears in one of its four variations. Henrichs Grain notes that the arbitration clause was not labeled as such on the Purchase Terms page until Versions 3 and 4, where a bold-faced, underlined heading read "**NGFA Trade and Arbitration Rules**."

Henrichs Grain ultimately had adequate opportunities to both see the arbitration clause and understand its terms. Though Henrichs Grain argues that the clause was "buried in fine print", the print on the reverse side of the contract was the same size for all of the Purchase Terms and the terms were clearly enumerated. Henrichs Grain was not left to figure out that there was a reverse side of the contracts with additional terms where the bold-faced sentence that referenced the reverse side appeared immediately above the signature line on the front side. Furthermore, Henrichs Grain was clearly alerted to the NGFA as governing the parties'

---

[3] Some contracts include the words "**Where present**" preceding this sentence.

contracts. Henrichs Grain's citation to *Timmerman v. The Grain Exchange, LLC* is unavailing. 915 N.E.2d 113 (Ill. App. 5th Dist. 2009). In *Timmerman*, most of the contracts at issue referenced the NGFA Rules as applicable, the Rules were not set forth in the contracts, and no specific reference to arbitration was included in the contracts. *Id.* at 116. The *Timmerman* court found that the arbitration provision in the parties' contracts was procedurally unconscionable where the Rules were not provided to the plaintiffs, no specific reference to arbitration was made in the contracts, and the arbitration provision was difficult to find and read. *Id.* at 120-21. The *Timmerman* court denied the defendant's motion to compel arbitration. *Id.*

The *Timmerman* court discussed *Bunge Corp. v. Williams*, where the contracts contained a bold-faced capitalized sentence immediately above the signature line which read: "THE TERMS APPEARING ON THE BACK HEREOF ARE A PART OF THIS CONTRACT." *Timmerman*, 915 N.E.2d at 120 (*citing Bunge*, 359 N.E.2d 844 (Ill App. 5th Dist. 1977)). On the back of the contracts, the arbitration provision appeared and stated that all disputes over the contract would be arbitrated according to the NGFA Rules. *Bunge*, 359 N.E.2d at 846. The *Timmerman* court distinguished *Bunge*, explaining:

> The contracts in the *Bunge Corp.* case explicitly provided for the arbitration of all disputes and controversies, and the arbitration provision was brought to the producers' attention by virtue of prominent language located just above the signature line. In *Bunge Corp.*, all the producers had to do to learn of the arbitration provision was to read the contract they were signing.

*Timmerman*, 915 N.E.2d at 120. This case is distinguishable from *Timmerman* for the same reasons that *Bunge* is distinguishable from *Timmerman*. Furthermore, it is not enough that Mark Henrichs does not recall ever seeing any print on the reverse side of any contract prior to

6

entering into any contract with Cargill on behalf of Henrichs Grain. Mark Henrichs Aff, ¶ 3.[4]
See *Miller v. Wines*, 554 N.E.2d 784, 787-88 (Ill. App. 4th Dist.1990) (citing cases) ("Failure to read a document before signing it is normally no excuse for a party who signs it"); *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1148 (7th Cir. 1997) (*citing Carr v. Cigna Sec., Inc.*, 95 F.3d 544, 547 (7th Cir. 1996)) ("A contract need not be read to be effective; people who accept take the risk that the unread terms may in retrospect prove unwelcome"); *and Tortoriello v. Gerald Nissan of North Aurora, Inc.*, 882 N.E.2d 157, 162, 175-76 (Ill. App. 2d Dist. 2008) (inconspicuous arbitration clause on reverse side of contract not procedurally unconscionable where it was brought to reader's attention by notice elsewhere in the contract). In considering the totality of the circumstances, the Court finds that none of the 4 versions of the arbitration clause are procedurally unconscionable where it was sufficiently referenced on the front side of the parties' contracts, it was not difficult to find or read on the reverse side, and where Henrichs Grain repeatedly entered into contracts which contained the arbitration clause in some form.

**II. Substantive Unconscionability**

Henrichs Grain argues in the alternative, that if the arbitration clause is not procedurally unconscionable, it is still unenforceable because it is substantively unconscionable. Under Illinois law, unconscionability may be either procedural, substantive, or both. *Razor*, 854 N.E.2d at 622; *Williams v. Jo-Carroll Energy, Inc.*, 890 N.E.2d 566, 569 (Ill. App. 2d Dist. 2008) (*citing*

---

[4] In Henrichs Grain's Supplemental Brief, it states that it is logical to conclude that Cargill anticipated that its customers would not read the reverse side of the documents, otherwise Cargill would not have selected two of its "preferred 'Purchase Terms'" to be prominently placed on the front side of the contracts. Whether it is logical or not to so conclude does not excuse Henrichs Grain's failure to read the entire contract where Cargill did not actively hide the arbitration clause.

*Kinkel*, 857 N.E.2d 250). Substantive unconscionability refers to contract terms that are so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity. *Kinkel*, 857 N.E.2d at 267; *Razor*, 854 N.E.2d at 622. Where the parties are commercial entities, "[s]ubstantive unconscionability concerns the question whether the terms themselves are commercially reasonable." *Frank's Maint.*, 408 N.E.2d at 410.

Here, Henrichs Grain argues that the arbitration clause of the parties' contracts is substantively unconscionable because the NGFA Arbitration Rules do not provide for the right to demand production of documents, or the right to subpoena documents or witnesses. Henrichs Grain contends, therefore, that it will not be able to effectively advance its causes of action, including breach of fiduciary duty, consumer fraud, and common law fraud, where it will be without the benefit of the Federal Rules of Civil Procedure and the enforcement powers of this Court. Henrichs Grain specifically contends that the NGFA Arbitration Rules contain no provision that would authorize the NGFA to order an equitable accounting, a "vital part" of Henrichs Grain's case, and as a result, it will be severely prejudiced. During the phone hearing on January 20, 2010, Henrichs Grain explained that while the Rules allow the parties to demand an oral hearing, because no discovery is permitted, it will be impossible to pursue all of Henrichs Grain's claims.

Henrichs Grain cites *Hoffman v. Cargill, Inc.*, for the proposition that the NGFA's limits on the arbitration process amount to fundamental unfairness. *Hoffman v. Cargill*, 59 F.Supp. 2d 861 (N.D. Iowa 1999) (*reversed on appeal by Hoffman v. Cargill, Inc.*, 236 F.3d 458 (8th Cir. 2001)) ("*Hoffman Two*"). In *Hoffman*, an NGFA arbitration panel considered whether the

defendant knew its scales provided inaccurate measurements so as to cause substantial underpayments to farmers. *Id.* at 868. The *Hoffman* court ultimately determined that "NGFA arbitration does not provide what a reasonable person in the circumstances of the [plaintiff and defendant] would consider a *fair opportunity to present evidence* before impartial arbitrators," and so the district court vacated the defendant's award because of fundamental unfairness. *Id.* at 894 (emphasis in original). However, the 8th Circuit reversed the district court's holding, explaining that fundamental unfairness was not a basis for vacating an arbitration award, and further stating:

> Arbitration is not a perfect system of justice, nor is it designed to be . . . "Parties should be aware that they get what they bargain for and that arbitration is far different from adjudication" . . . In the arbitration setting we have almost none of the protections that fundamental fairness and due process [usually] require . . . Discovery is abbreviated if available at all. The rules of evidence are employed, if at all, in a very relaxed manner. The factfinders (here the panel) operate with almost none of the controls and safeguards [expected in litigation] . . . Having entered such a contract, a party must subsequently abide by the rules to which it agreed.

*Hoffman Two*, 236 F.3d at 462-63 (citations omitted).

Ultimately, the arbitration clause in the contracts between Henrichs Grain and Cargill are not substantively unconscionable. The arbitration clause is not inordinately one-sided in Cargill's favor and in this commercial setting, the clause is not unreasonable. Both parties, not just Henrichs Grain, are limited in terms of discovery and subpoena power. As the 8th Circuit explained in *Hoffman Two*, Henrichs Grain entered into contracts which provided for arbitration pursuant to NGFA Arbitration Rules, and must ultimately abide by the rules to which it agreed.[5]

---

[5] Henrichs Grain notes that Cargill is "presumably a substantial dues paying member" of the panel of NGFA arbitrators. To the extent that Henrichs Grain mentions this to imply arbitral bias, the NGFA Arbitration Rules provide for potential conflicts of interest. *See Arbitration Rules of the National Grain and Feed Association*, http://ngfa.org/trade-rules.cfm, p.49 (a

### III. Scope of the Arbitration Clause

Henrichs Grain finally contends that because portions of its Complaint fall outside the scope of the arbitration clause, Cargill's motion to compel arbitration should be denied. Henrichs Grain cites to Section 2. of the NGFA Arbitration Rules which provides:

> The term dispute as used, herein, shall be deemed to cover the original complaint as filed, and also any cross complaint, counterclaim, or offset as set forth by the defendant, but in no case shall the matters submitted by the defendant be any other than those directly related to the transaction on which the original complaint is made.

*Arbitration Rules of the National Grain and Feed Association*, http://nfga.org/trade-rules.cfm, p.49 . Henrichs Grain points to the fact that Cargill only attached eight of the parties' contracts to its demand for arbitration filed with the NGFA, and so if Henrichs Grain's claims are not "directly related" to the eight contracts Cargill attached, Henrichs Grain will presumably not be allowed to pursue them. Cargill contends that Henrichs Grain has attempted to avoid the mandatory arbitration clauses of the parties' contracts by asserting a variety of claims that are not limited to the law of contracts.

"Claims of fraud under a contract, breach of fiduciary duty, negligence, and gross negligence are not immune from arbitration under a broadly-worded valid arbitration clause." *Pierson v. Dean, Witter, Reynolds, Inc.*, 742 F.2d 334, 338 (7th Cir. 1984); *see also Kroll v. Doctor's Associates, Inc.*, 3 F.3d 1167, 1170 (7th Cir. 1993) (fraud claims were arbitrable where they were directly related to the agreements themselves). Here, the parties' various arbitration clauses provided for arbitration of disputes "arising under" the contracts or "relating to the

---

qualified arbitrator is one who is "commercially disinterested with respect to the particular dispute intended to be presented to him for judgment").

formation"[6] of the contracts. That language is worded broadly enough to provide for the arbitration of Henrich's Grain's claims, whether they sound in contract law or tort law. At this point, some of Henrich's Grains claims are certainly within the scope of the arbitration clause, and so the Court finds that questions concerning the scope of additional issues subject to arbitration are resolved in favor of arbitration. *See Lieschke v. Real Networks, Inc.*, 2000 U.S. Dist Lexis, at *7 (N.D. Ill. Feb. 11, 2000) (*citing Miller v. Flume*, 139 F.3d 1130, 1136 (7th Cir. 1998)). Furthermore, in Cargill's Reply to Henrichs Grain's supplemental response to Cargill's motion to compel arbitration, and during the phone hearing on January 20, 2010, Cargill represented that all of Henrich's Grain's claims are arbitrable under the broadly worded arbitration clause. *See* Dft's Reply, Dkt. 36, p. 10.

## CONCLUSION

For the reasons set forth above, Defendant Cargill's Motion to Stay Proceedings and to Compel Arbitration [#26] is GRANTED. Accordingly, these proceedings are STAYED pending arbitration. The parties are directed to notify the Court of the status of their arbitration by July 28, 2010.

ENTERED this 28th day of January, 2010.

s/Michael M. Mihm<br>
Michael M. Mihm<br>
United States District Judge

---

[6] The "relating to the formation" language appeared in Versions 2, 3, and 4.

11